S10Q0041. STAMPS v. JFB PROPERTIES, LLC et al.
(694 SE2d 649)

BENHAM, Justice.

This case is before us on a certified question from the United States District Court for the Northern District of Georgia. 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9. The underlying case is a dispute over a $700,000 term life insurance policy on the life of Thomas Stamps, the late husband of plaintiff Diana Lynn Stamps. In 2003, Mr. Stamps was diagnosed with an aggressive form of leukemia. Up until the spring of 2003, Mr. Stamps had a longtime career as an attorney. During his career, Mr. Stamps performed legal work for defendant Charles Prater and the two became close friends. Mr. Stamps' financial situation drastically deteriorated after his diagnosis because he was unable to work and so Mr. Stamps sought financial assistance from Prater who co-owned JFB Properties, LLC with defendant Craig Vaughn. The Stampses disclosed their personal financial information to Prater in this process, including information about several term life insurance policies they owned. Prater enlisted his friend Jimmy Doyle to pursue his contacts in the banking and

insurance industries to try and secure funding for the Stampses, but Mr. Doyle's efforts were unsuccessful. Prater then enlisted Vaughn and Doyle to pool their money and lend the Stampses $50,000 pursuant to an unsecured promissory note which the Stampses signed on June 10, 2003. On that day, Prater also offered to purchase the $700,000 term life insurance policy for $520,000, but Mr. Stamps refused, insisting that he wanted to use the policy as collateral for a loan. Eventually, Prater, via JFB Properties, LLC, agreed to lend the Stampses a total of $350,000, including the $50,000 lent on June 10, using the $700,000 life insurance policy as collateral. Before the contract was executed, however, Prater went to prison for crimes unrelated to this matter. Vaughn testified that Prater asked him to continue to oversee the agreement and to have Rick Brown, the attorney for JFB Properties, LLC, draft the paperwork for the agreement. Brown testified he drafted the agreement such that the Stampses were selling the policy to JFB Properties, LLC, rather than using it as collateral for a loan. On July 28, 2003, Vaughn took the agreement to the hospital where Mr. Stamps had been admitted for treatment of a fever and the Stampses signed it without reading it.[1] After Mr. Stamps' death in December 2003, Mrs. Stamps, who had at one time been the beneficiary of the policy, and the defendants both filed claims asserting rights to the proceeds of the insurance policy. The insurance company deposited the funds with the court and instituted an interpleader action.

At trial, a jury returned a verdict in favor of Mrs. Stamps, finding a confidential relationship existed between Mr. Stamps and Prater and that Prater committed fraud.[2] The defendants moved for a judgment notwithstanding the verdict. To resolve defendants' motion, the Northern District of Georgia has certified the following question to this Court:

> Does Georgia law support the finding of a confidential relationship between Prater and Stamps, such that Prater owed a fiduciary obligation to Stamps where: (1) Prater and Stamps were close friends and business associates; (2) Stamps was a practicing attorney and had represented Prater in the past; (3) Stamps asked for Prater's help in meeting his financial obligations while he recovered from

---

[1] By this time, Mr. Stamps' cancer had moved to his brain and there was witness testimony at trial that, due to his illness and radiation treatments to his brain, Mr. Stamps' vision had deteriorated such that he could no longer read and had to have documents read to him. Mrs. Stamps was under treatment for anxiety and took prescribed anti-anxiety medication which precluded her from driving.

[2] The jury did not find any fraud on the part of Vaughn or JFB Properties, LLC.

leukemia and, in connection with his request, provided detailed information to Prater about his finances and about the life insurance policy at issue in this case; (4) Prater promised and voluntarily undertook to help Stamps, personally loaned Stamps $50,000 in exchange for an unsecured promissory note, and later agreed to loan Stamps $300,000 more, with the term $700,000 life insurance policy to be used as collateral for the $350,000 loan; and (5) Prater informed Stamps that he would have his attorney draft a loan agreement whereby the life insurance policy would be used as collateral for a $350,000 loan?

For reasons set forth more fully below, we answer in the affirmative.

A person is bound by any contract he signs without reading unless he can show: (1) an emergency at the time of signing that would excuse his failure to read; (2) the other party misled him by an artifice or device which prevented him from reading; or (3) a fiduciary or confidential relationship existed on which he relied in not reading the contract. *Cochran v. Murrah*, 235 Ga. 304, 305 (219 SE2d 421) (1975). OCGA § 23-2-58 defines a confidential relationship as follows:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

Such relationships may be created by law, contract, or by fact. *Cochran v. Murrah*, 235 Ga. at 306 (based on facts of the case, a confidential relationship existed between the employer and employee). "The showing of a relationship *in fact* which justifies the reposing of confidence in another is all the law requires." Id. at 307 (emphasis in original). The determination as to whether a confidential relationship exists as defined by OCGA § 23-2-58 is a question for the trier of fact and, if there is any evidence to support the trier of fact's determination, the trier of fact's decision on the matter will be affirmed. *Trotman v. Forrester*, 279 Ga. 844, 845 (621 SE2d 724) (2005) (confidential relationship existed between elderly testatrix and her nephew who was her beneficiary). See also *Tankersley v. Barker*, 286 Ga. App. 788 (651 SE2d 435) (2007) (existence of a confidential relationship is for a jury and there was no error in denying the motion for a directed verdict on that issue); *Douglas v.*

*Bigley*, 278 Ga. App. 117 (1) (a) (628 SE2d 199) (2006) (existence of a confidential relationship is for the jury and the trial court's denial of a judgment notwithstanding the verdict on the matter was not error); *Howard v. Barron*, 272 Ga. App. 360 (2) (612 SE2d 569) (2005) (motion for a directed verdict improper because there was an issue of fact whether a confidential relationship existed between a seller and a buyer in real estate transaction and the matter was required to be determined by a jury); *Yarbrough v. Kirkland*, 249 Ga. App. 523 (2) (548 SE2d 670) (2001) (existence of confidential relationship is ordinarily an issue for a jury and not disposed of on summary judgment).

In this case, there is evidence from which a jury could reasonably conclude that a confidential relationship existed between Mr. Stamps and Prater. *Cochran v. Murrah*, supra, 235 Ga. 304. Mr. Stamps and Prater had developed a friendship in addition to their past relationship as lawyer and client. When faced with a serious illness and loss of his livelihood, Mr. Stamps turned to Prater and disclosed private financial matters in order to secure a significant amount of money to support his family during his illness. At trial, three witnesses testified that Mr. Stamps did not agree to sell the policy and two witnesses testified that Mr. Stamps wanted to use the policy as collateral to secure a loan. Although Prater went to prison as the relevant events were unfolding, Prater enlisted Vaughn and Brown to facilitate Prater's promise to help Mr. Stamps with his personal financial situation. While in a state of personal crisis, Mr. and Mrs. Stamps reposed their trust in Prater and, by extension, his associates,[3] to secure the promised funds via a loan agreement, not a sales agreement. Accordingly, this Court answers the certified question in the affirmative.

*Certified question answered. All the Justices concur.*

DECIDED APRIL 19, 2010.

*Ashe, Rafuse & Hill, William B. Hill, Jr., Joseph C. Sharp, Angela S. Blackwell, Dax E. Lopez, Justin M. Scott, Megan A. Kelly*, for appellant.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew, Mark M. J. Webb, Gray, Rust, St. Amand, Moffett & Brieske,*

---

[3] Prater is the common link to any and all ancillary dealings the Stampses had with Vaughn, Doyle, and Brown.

*Michael D. St. Amand, Sarah B. Hoffman, William F. Sparks,* for appellee.