S11A0019. DANIEL et al. v. AMICALOLA ELECTRIC
MEMBERSHIP CORPORATION.
(711 SE2d 709)

NAHMIAS, Justice.

The trial court entered summary judgment against appellants Margaret and Buddie Daniel on their claims for trespass, conversion, and declaratory judgment against the Amicalola Electric Membership Corporation (AEMC). We affirm the trial court's rejection of the Daniels' constitutional challenges to the one-year statute of limitation contained in OCGA § 46-3-204. We then affirm in part and reverse in part the grant of summary judgment because issues of

material fact remain regarding the existence of a valid prescriptive easement and the Daniels' trespass and conversion claims based on AEMC's 2008 actions are not barred by OCGA § 46-3-204.

1. Viewed in the light most favorable to the Daniels as the party opposing summary judgment, the evidence in the record shows the following. In 2006, the Daniels bought a house and 26.28 acres of land in rural Pickens County. AEMC had long ago run utility lines through a wooded area far from the house but had taken them out of service at least 15 years earlier. The Daniels' title search showed no recorded easements, and they found no evidence of a utility easement during their thorough pre-closing physical inspection of the property. Neither the Daniels nor their immediate predecessors had actual knowledge of the old utility lines.

On April 6, 2007, the Daniels discovered that AEMC had entered the property and clear-cut a swath 750 feet long by 40 feet wide through the forest. AEMC used chainsaws to remove over 40 trees, including some that had been there for at least 25 years, and substantially damaged a natural spring and a creek bank. The clear-cutting exposed a single standing utility pole with unconnected wires dangling from it and a second utility pole rotting on the ground. There were no live wires.

The Daniels complained to AEMC and were directed to Bobby Crump, AEMC's long-time manager in charge of utility line maintenance. Crump told the Daniels that AEMC had abandoned the utility lines on the property over ten years ago, that no wires had been run across the area that was clear-cut for many years, that overgrown vegetation had obscured any visible signs of utility poles in the area, and that AEMC did not have an easement on the property. Crump assured the Daniels that AEMC would not reenter the property or perform any further maintenance work until the easement issue had been resolved. Despite Crump's assurances, the Daniels had an attorney write a cease and desist letter to AEMC on April 13, 2007. AEMC did not respond.

Thirteen months later, on May 21, 2008, AEMC again entered the Daniels' property without notice to spray herbicide, killing the vegetation that had begun to grow back since the clear-cutting a year earlier. The Daniels' attorney immediately wrote AEMC to protest the new entry. On May 22, 2008, AEMC's attorney wrote back, asserting that AEMC had an easement across the property and had not abandoned the easement. An AEMC corporate representative later confirmed that there was no written easement.

On July 7, 2008, the Daniels filed suit against AEMC seeking a declaratory judgment that AEMC did not have an easement on their property, damages for trespass and conversion for the 2007 and 2008 incidents, an injunction against further trespasses, and attorney

fees. AEMC filed an answer and counterclaim seeking a declaration that it had a prescriptive easement. AEMC later asserted as a defense that the lawsuit was filed after the one-year statute of limitation, see OCGA § 46-3-204,[1] had run and filed a motion for summary judgment on that ground. In response, the Daniels disputed the existence of an easement and argued that the statute of limitation should be tolled because AEMC fraudulently concealed their causes of action, which they had exercised reasonable diligence to discover. The Daniels also argued that their claims based on the second incident were not time-barred in any event, because they accrued in May 2008 and the complaint was filed two months later. On August 20, 2009, the Daniels filed a supplemental brief asserting that OCGA § 46-3-204 is unconstitutional because it violates the Equal Protection Clause of the Georgia Constitution and is unconstitutionally vague.

At the summary judgment hearing on January 6, 2010, AEMC argued that the trial court lacked jurisdiction to rule on the merits of the Daniels' constitutional challenges to OCGA § 46-3-204 because the Daniels did not serve a copy of the supplemental brief on the Attorney General. The Daniels served the Attorney General the following day. Five months later, on June 7, 2010, the trial court granted summary judgment to AEMC, and the Daniels filed a timely appeal.

2. We first address AEMC's contention that the trial court and this Court lack jurisdiction to decide the Daniels' constitutional challenges to OCGA § 46-3-204 because this is (in part) a declaratory judgment action and the Daniels failed to timely serve the Attorney General with a copy of the proceeding.[2] AEMC cites OCGA § 9-4-7 (c), which is part of Georgia's Uniform Declaratory Judgments Act, see OCGA §§ 9-4-1 to 9-4-10. OCGA § 9-4-7 (c) provides that "[i]f a statute of the state . . . is alleged to be unconstitutional, the Attorney

---

[1] OCGA § 46-3-204 provides as follows:

All rights of action accruing against any electric membership corporation growing out of the acquisition of rights of way or easements or the occupying of lands of others by such electric membership corporations shall be barred at the end of 12 months from the date of the accrual of such cause of action; and in cases where any such electric membership corporation is in possession of the lands of others without having condemned the property as provided, and such electric membership corporation is using any such land of another for any of the purposes for which an electric membership corporation may be created under this article, and the owners of the land took no legal steps to prevent the occupation of the land by the electric membership corporation, the rights of the owner of the land shall be limited to whatever damages may have been caused to his realty by such occupation; and this limitation shall apply to all persons whether sui juris or not.

[2] The Georgia Electric Membership Corporation has filed an amicus curiae brief in support of AEMC, which also makes this argument.

General of the state shall be served with a copy of the proceeding and shall be entitled to be heard." AEMC also relies on *Williams v. Kaylor*, 218 Ga. 576 (129 SE2d 791) (1963), where we held that compliance with OCGA § 9-4-7 (c) is "mandatory and jurisdictional." Id. at 576.

OCGA § 9-4-7 (c) applies only in declaratory judgment actions. See, e.g., *Woodes v. Morris*, 247 Ga. 771, 772 (279 SE2d 704) (1981); *Daniel v. Fed. Nat. Mtg. Assn.*, 231 Ga. 385, 387 (202 SE2d 388) (1973). The purpose of the requirement is to give the Attorney General " 'notice . . . of a constitutional attack being made on the statute and the opportunity, if he desires, to be heard.' " *State of Ga. v. Golia*, 235 Ga. 791, 794 (222 SE2d 27) (1976) (citation omitted). Despite OCGA § 9-4-7 (c)'s use of the word "serve," we have long held that it "does not make the Attorney General a party to the proceeding, nor does it require service of process upon him . . . under the provisions of the Civil Practice Act." *Pharris v. Mayor &c. of Jefferson*, 226 Ga. 489, 490 (175 SE2d 845) (1970). Moreover, "[t]here is no requirement that notice of service be filed in the record." Id. The Declaratory Judgments Act does not say how the Attorney General is to be served, and, of particular importance here, it does not set a time or deadline for compliance to avoid dismissal. See *Williams v. Kaylor*, 218 Ga. at 579 (noting that "what constitutes compliance [with OCGA § 9-4-7 (c)] and the extent to which the attorney general may or should participate" are not settled in the case law). Notably, the statute does not appear intended to allow pre-litigation settlement of constitutional challenges, but rather to ensure that the State has the opportunity to defend its laws in court before they are declared invalid. Compare *Cummings v. Ga. Dept. of Juvenile Justice*, 282 Ga. 822, 824 (653 SE2d 729) (2007) (" '[T]he purpose of [ante litem notice] requirements is to ensure that the state receives adequate notice of the claim to facilitate settlement before the filing of a lawsuit' " (citations omitted)).

We conclude that OCGA § 9-4-7 (c) does not apply to this case. The Daniels did not file a declaratory judgment action to have OCGA § 46-3-204 declared unconstitutional. The declaratory judgments sought by the Daniels and by AEMC in its counterclaim pertain to whether AEMC has an easement on the Daniels' land. OCGA § 46-3-204 was raised by AEMC as a defense, and the Daniels then asserted the unconstitutionality of OCGA § 46-3-204 as an argument against that defense. This is far afield from filing a declaratory judgment action seeking to hold OCGA § 46-3-204 unconstitutional.

Furthermore, even assuming that OCGA § 9-4-7 (c) did apply here, it was not violated. OCGA § 46-3-204 was not at issue in the case until April 2009, when AEMC amended its answer and counterclaim to plead OCGA § 46-3-204 as a defense. The Daniels

challenged the constitutionality of applying the statute of limitation to their claims in August 2009, and AEMC first complained about the alleged lack of compliance with OCGA § 9-4-7 (c) at the summary judgment hearing on January 6, 2010. The Daniels had a copy of their supplemental brief hand-delivered to the Attorney General the next day along with a cover letter informing him that they had made a constitutional challenge to OCGA § 46-3-204, that the trial court had taken the matter under advisement, and that the Attorney General should inform the trial court if he wished to be heard on the matter. The trial court then kept the matter under advisement for the next five months before ruling.

Thus, the Attorney General had notice of the Daniels' challenge to the constitutionality of OCGA § 46-3-204 five months before the trial court ruled, but he made no attempt to be heard on the matter. Nor has the Attorney General participated in the case on appeal. Under these circumstances, we cannot say that the Daniels failed to sufficiently comply with OCGA § 9-4-7 (c), even assuming they were required to do so. We therefore reject AEMC's argument that this Court and the trial court lack jurisdiction and decline to dismiss the appeal. This case is not like *Williams v. Kaylor*, where we affirmed dismissal of a complaint filed under the Declaratory Judgments Act to have a statute declared unconstitutional on the alternative ground that the trial court lacked jurisdiction where the plaintiff admitted that the Attorney General had *never* been served. See 218 Ga. at 575-576.

3. The Daniels contend that the trial court rejected their equal protection and vagueness claims because it erroneously concluded that this Court had previously rejected those claims. The Daniels are correct that we have not squarely addressed their constitutional challenges to OCGA § 46-3-204,[3] but we now find the claims to be meritless. See *Smith v. Lockridge*, 288 Ga. 180, 186 (702 SE2d 858) (2010) (affirming grant of summary judgment on grounds different from the trial court).

(a) *Equal Protection*: The Daniels assert that OCGA § 46-3-204 violates equal protection because the one-year statute of limitation for certain claims against EMCs lacks a rational basis, because similar claims may be filed later against other utilities. The rational basis test requires only that the legislative classification bear " 'a rational relationship to a legitimate end of government not prohibited by the constitution.' " *Nichols v. Gross*, 282 Ga. 811, 813 (653 SE2d 747) (2007) (citation omitted).

---

[3] The case the trial court cited, *Irwin County Elec. Membership Corp. v. Haddock*, 214 Ga. 682 (107 SE2d 195) (1959), decided other constitutional challenges to OCGA § 46-3-204.

OCGA § 46-3-204 is part of a legislative scheme enacted during the Great Depression. For-profit electric utilities that provided power in densely populated urban areas could not profitably extend power to Americans living in sparsely populated areas of the country, and nine out of ten farms had no electric service. See *Salt River Project Agricultural Improvement & Power Dist. v. Fed. Power Comm.*, 391 F2d 470, 475 (D.C. Cir. 1968). Congress passed the Rural Electrification Act of 1936, which provided low-interest loans and technical support to non-profit rural electrification cooperatives in order to extend economical electric power to rural America. A year later, the General Assembly enacted the Electric Membership Corporation Act (EMC Act) to implement the federal program in Georgia. Rural Georgians formed EMCs across the state, increasing eight-fold the number of miles of distribution lines in Georgia in just two years.

This rapid extension of the facilities needed to provide electric service to unserved areas obviously impinged on the property rights of numerous landowners. In 1939, the General Assembly added what is now OCGA § 46-3-204 to the EMC Act to set a one-year statute of limitation for rights of action resulting from an EMC's acquisition of an easement on or occupation of the land of others. See Ga. L. 1939, p. 312, § 3. The legislature enacted a similar statute for rural telephone cooperatives. See OCGA § 46-5-97. The legitimate government interest served by both statutes was to encourage widespread growth of public utility service in Georgia.

The short statute of limitation reflects the fact that EMCs are statutorily required to provide service to all those in their coverage area who desire service, and they may incur high capital costs to fulfill this duty. In addition, unlike for-profit utilities, these non-profit, consumer-owned entities have no profit margin to cushion the financial blow of damages payments or re-routing of distribution facilities as a result of lawsuits filed long after alleged causes of action arise. In light of these differences from other utilities and other businesses, we cannot say that it was irrational for the General Assembly to require that landowners seeking to enforce property rights bring claims against EMCs (and telephone cooperatives) more expeditiously.

The Daniels argue that these rationales are not in the record and are not applicable to the specific EMC lines that once ran across their property. But neither is required to allow a statute to survive a challenge under the rational basis test. See *Ga. Dept. of Human Resources v. Sweat*, 276 Ga. 627, 630 (580 SE2d 206) (2003) ("Under the rational basis test, a court will uphold the statute if, under any conceivable set of facts, the classifications drawn in the statute bear a rational relationship to a legitimate end of government not prohibited by the Constitution."). As this Court said in rejecting a

different constitutional challenge to OCGA § 46-3-204:

> A classification as to persons located in a rural area within the State, as defined by the General Assembly of Georgia and the act of Congress, is a natural classification. It is not arbitrary; it stands upon reason; it has regard to the character of the legislation of which it is a part (rural electrification) . . . .

*Irwin County Elec. Membership Corp. v. Haddock*, 214 Ga. at 684.

(b) *Vagueness*: " 'To withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent.' " *Bell v. Austin*, 278 Ga. 844, 847 (607 SE2d 569) (2005) (citation omitted). Moreover, "[w]ith regard to a vagueness challenge, there is a greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Foster v. State*, 273 Ga. 555, 556 (544 SE2d 153) (2001) (citations and punctuation omitted).

The Daniels contend that OCGA § 46-3-204 is unconstitutionally vague regarding the events that lead to the accrual of a cause of action against an EMC and the "legal steps" a property owner must take to recover more than damages. However, when read in its entirety, OCGA § 46-3-204 is clear as to its meaning and application. A statute of limitation need not restate the law on accrual of causes of action to be comprehensible, and the phrase "legal steps," while perhaps not the most precise term, is sufficient to inform property owners that if they want to obtain a remedy other than damages, they must use the law to prevent an EMC from actually occupying their land.

The Daniels also argue that the statute is unconstitutionally vague because limiting damages in certain cases to "whatever damages may have been caused to his realty by such occupation" treats differently damages and claims for other relief arising out of the same conduct. That difference exists, but it does not make the statute unclear. The property owner is clearly limited to a damages remedy when the EMC's possession is not pursuant to a condemnation action, the use is consistent with the EMC's statutory purposes, and the landowner did not take legal steps to prevent occupation by the EMC. If an EMC was using someone's land for an activity outside its statutory purposes — say, to operate an amusement park — the owner's remedies clearly would not be so limited. Accordingly, we affirm the trial court's judgment upholding the constitutionality of OCGA § 46-3-204.

4. The Daniels contend that the trial court erred in applying

OCGA § 46-3-204's one-year statute of limitation to evaluate AEMC's easement claim, instead of applying OCGA § 44-9-1's 20-year statute of limitation for acquiring by prescription a "private right of way" through "wild lands." This contention is meritless. OCGA § 44-9-1 describes how to acquire a "private right of way," which is a road or path allowing someone to go to and from his property or place of business. See OCGA § 44-9-40; *Moody v. Degges*, 258 Ga. App. 135, 138 (573 SE2d 93) (2002). AEMC does not assert a private right of way across the Daniels' property, but rather an easement by prescription, which is governed by OCGA §§ 44-5-160 to 44-5-177.

5. The Daniels' remaining enumerations of error contend that the trial court erred in granting AEMC summary judgment, thereby implicitly finding no issue of material fact with regard to their causes of action and AEMC's statute of limitation defense.

(a) We first recognize that AEMC did not seek summary judgment on the ground that the undisputed facts show that AEMC has an easement on the Daniels' property. Resolution of that issue would dispose of the case in its entirety, because if AEMC has a valid easement permitting its activities on the Daniels' land, then there could be no trespass or conversion in 2007 or 2008. However, it is undisputed that AEMC did not have a written easement, and there is a clear dispute in the evidence regarding whether AEMC had a prescriptive easement before the 2007 entry, whether AEMC abandoned any easement it had, and whether the Daniels had notice of any easement when they purchased the land for value in 2006. Thus, summary judgment was clearly inappropriate on the parties' competing easement claims, and the trespass and conversion claims could not be denied on the merits based on the disputed premise that AEMC has a valid easement.

(b) The remaining question is whether the one-year statute of limitation in OCGA § 46-3-204 barred the Daniels' trespass and conversion claims, rendering summary judgment to AEMC on these claims appropriate in whole or part.

*2007 Incident*: On April 6, 2007, the Daniels first discovered that AEMC had entered the property without their consent and clear-cut a large swath of forest shortly after the entry occurred. The trespass and conversion were apparent, and the claims for the first entry clearly accrued at that time. But the complaint was not filed until more than a year later, on June 8, 2008. The Daniels seek to salvage their claims regarding the 2007 incident by arguing that the statute of limitation was tolled by AEMC's fraudulent concealment of their causes of action.

Under Georgia law, if the defendant is "guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an

action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." OCGA § 9-3-96. To establish fraudulent concealment, a plaintiff must prove that: (1) the defendant committed actual fraud; (2) the fraud concealed the cause of action from the plaintiff; and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation. See *Jim Walter Corp. v. Ward*, 245 Ga. 355, 357 (265 SE2d 7) (1980); *McElmurray v. Augusta-Richmond County*, 274 Ga. App. 605, 615 (618 SE2d 59) (2005).

The Daniels argue that AEMC defrauded them by claiming that it had no easement and no plan to enter the property again. But that would not toll their claims relating to the 2007 entry. Under this view of the facts, the trespass was completed and would not recur, and no matter what, AEMC could not put back the trees and vegetation it had clear-cut, so the conversion was complete. There is no allegation, much less evidence, that AEMC misled the Daniels as to a damages action (e.g., "Don't sue us now; we're just figuring out how to pay you for our wrongful entry and damage to your property."). The Daniels may reasonably have been more concerned about future trespasses than being paid, but if they wanted payment of damages for the unconcealed entry and clear-cutting of their property by an EMC, they had to sue within a year. They did not, and thus the undisputed facts show that the Daniels' trespass and conversion claims for the 2007 incident were time-barred by OCGA § 46-3-204 and summary judgment to AEMC was proper to that extent.

*2008 Incident*: The Daniels filed suit within two months of AEMC's 2008 alleged trespass and conversion. AEMC contends that these claims are barred as well because they are part of a continuing trespass. But the 2008 conversion — the destruction of more vegetation — was new, and so that claim is clearly not time-barred. And given the evidence that an AEMC representative disclaimed any easement or other right to enter the property again after the 2007 incident, the 2008 entry cannot be deemed *as a matter of law* to be part of a continuing trespass. There is evidence that it was a new intrusion, and the Daniels sued promptly to challenge it. The representations by AEMC's representative also distinguish this case from the ongoing nuisance case relied on by AEMC and the trial court. Accordingly, the trial court erred in granting summary judgment to AEMC on the 2008 claims.

*Judgment affirmed in part and reversed in part, and case remanded. All the Justices concur.*

DECIDED JUNE 27, 2011.

*Krevolin & Horst, Jeffrey D. Horst, Troy R. Covington*, for appellants.

*Sponcler & Tharpe, Henry C. Tharpe, Jr., Rebecca B. Gober*, for appellee.

*Tisinger Vance, Steven T. Minor, Kristen H. Dial*, amici curiae.