313 Ga. 558
FINAL COPY

S21G0549.  DOE v. SAINT JOSEPH'S CATHOLIC CHURCH et al.

COLVIN, Justice.

In December 2018, Philip Doe filed suit against Saint Joseph's Catholic Church, Archbishop Wilton Gregory, and the Archdiocese of Atlanta (collectively, "the Church"), asserting various tort claims based in part on childhood sexual abuse Doe allegedly suffered while serving as an altar boy at Saint Joseph's in the late 1970s.[1]  The trial court granted the Church's motion to dismiss, ruling, in pertinent part, that Doe's "non-nuisance tort claims" were barred by the applicable two-year statute of limitation, OCGA § 9-3-33,[2] and could

[1] Doe's amended complaint included three categories of claims against the Church: common-law and statutory claims for public nuisance (Counts 1 and 2); "non-nuisance tort claims" for negligent failure to train, supervise, and monitor (Count 3), negligent retention (Count 4), failure to warn (Count 5), failure to provide adequate security (Count 6), respondeat superior (Count 7), breach of fiduciary duty (Count 8), and fraudulent misrepresentation and concealment (Counts 9 and 10); and a claim for Racketeer Influenced and Corrupt Organizations ("RICO") Act violations (Count 11).

[2] In relevant part, OCGA § 9-3-33 says that, "[e]xcept as otherwise provided in this article, actions for injuries to the person shall be brought within two years after the right of action accrues[.]"  By operation of law, however, the limitation period for Doe's claims against the Church for torts

not be tolled for fraud by OCGA § 9-3-96, which provides that

> [i]f the defendant or those under whom he claims are
> guilty of a fraud by which the plaintiff has been debarred
> or deterred from bringing an action, the period of
> limitation shall run only from the time of the plaintiff's
> discovery of the fraud.

A divided panel of the Court of Appeals affirmed. See *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 712-715 (1) (a)-(c) (850 SE2d 267) (2020). We granted the Church's petition for certiorari, asking

> [w]hether the trial court erred in granting [the Church's]
> motion to dismiss [Doe's] non-nuisance tort claims based
> on the determination that the complaint failed to allege
> facts that could support the application of OCGA § 9-3-96
> sufficient to toll the statute of limitation as to the non-
> nuisance tort claims.[3]

For the reasons set forth below, we affirm in part and reverse in part

---

committed while he was a minor were tolled until he reached the age of majority in the 1980s. See OCGA § 9-3-90 (b) ("[I]ndividuals who are less than 18 years of age when a cause of action accrues shall be entitled to the same time after he or she reaches the age of 18 years to bring an action as is prescribed for other persons.").

[3] The Court of Appeals also affirmed the trial court's dismissal of the nuisance and RICO Act claims (Counts 1, 2, and 11). See *Doe*, 357 Ga. App. at 715-717 (1) (d), (2). We do not address those rulings, as our certiorari question was limited to what the Court of Appeals referred to as "Doe's non-nuisance tort claims (Counts 3 through 10)." Id. at 712 (1) (a).

2

the judgment of the Court of Appeals. Although the trial court correctly determined that Doe's claim seeking to hold the Church vicariously liable under the doctrine of respondeat superior was time-barred, the court erred in concluding at the motion-to-dismiss stage that Doe could not introduce evidence of fraud within the framework of his complaint sufficient under OCGA § 9-3-96 to toll the limitation period as to his claims of negligent training and supervision, negligent retention, failure to warn and provide adequate security, breach of fiduciary duty, and fraudulent misrepresentation and concealment.

1. Doe filed suit against the Church on December 20, 2018. According to Doe's amended complaint, the Church employed Father J. Douglas Edwards as a priest to oversee Saint Joseph's day-to-day operations from 1976 to 1981. In that role, Father Edwards was responsible for training altar boys and supervising them during Mass, regular meetings, practices, and overnight trips. Doe alleged that he served as an altar boy under Father Edwards's supervision for approximately three years in the late 1970s, from the age of 12

3

to 15. According to Doe, Father Edwards sexually molested him eight to ten times between 1976 and 1978, during the time period when he was serving as an altar boy.

Doe alleged that, before Father Edwards abused him, the Church knew that Father Edwards and other priests belonging to Archdioceses across the country had a history of sexually abusing children. Nevertheless, according to Doe, the Church engaged in a "systematic cover-up effort" to conceal the danger that the priests posed to minor parishioners like Doe, even as they encouraged Doe and other minor parishioners to serve as altar boys under the care and supervision of such priests.

Doe further alleged that on August 9 and 16, 2018, Archbishop Gregory issued public statements apologizing for "sexual abuse by Church leaders of children, young people and those over whom they exercised authority," the failure of Church leaders "to protect others from such damaging and deviant behavior," and the Church's disbelief and neglect of those who "came forward to tell Church officials of their torment." According to Doe, however, he "had no

4

knowledge that [the Church] knew that [Father] Edwards had been accused of molesting children" until November 6, 2018, when the Church "formally acknowledged th[e] culture of sexual abuse by its priests" by releasing a list of priests "credibly accused of sexual abuse of a minor." This list included Father Edwards, who had died in 1997, and showed that, in the 14 years preceding his transfer to Saint Joseph's, Father Edwards had served at nine different Catholic churches and taken a year-long leave of absence.[4]

The Church moved to dismiss the amended complaint, arguing that Doe's claims were time-barred pursuant to OCGA § 9-3-33. In response, Doe argued that OCGA § 9-3-96 tolled the limitation period until November 2018, when the Church disclosed its knowledge of credible sexual-abuse allegations against Father Edwards.

Following briefing and a hearing, the trial court rejected Doe's tolling argument and granted the Church's motion to dismiss. The

---

[4] Additional specific allegations pertinent to Doe's claims are discussed below.

trial court concluded that, even assuming the Church was in a confidential relationship with Doe and had fraudulently concealed its knowledge of Father Edwards's dangerous propensities, OCGA § 9-3-96 could not toll the limitation period because Doe "knew of the alleged abuse" and "the identity of his alleged abuser" in the 1970s and had not exercised reasonable diligence to discover his causes of action.

A divided panel of the Court of Appeals affirmed. While acknowledging that there was "no question that the facts alleged by Doe implicate the [Church] in a fraud involving moral turpitude," the majority concluded that Doe could not benefit from tolling under OCGA § 9-3-96. *Doe*, 357 Ga. App. at 714 (1) (c) (citation and punctuation omitted). Because "Doe knew he had been injured," "knew the identity of the perpetrator," and "was aware of the [C]hurch's inaction" after Father Edwards abused him, the majority reasoned, "Doe was aware at that time that the [C]hurch had breached its duties to him by hiring [Father] Edwards, exposing Doe to [Father] Edwards, and failing to protect Doe from [Father]

6

Edwards." Id. Accordingly, the majority concluded that the alleged fraud could not have "prevented Doe from pursuing his claims" against the Church. Id. Then-Chief Judge McFadden dissented, arguing, in relevant part, that OCGA § 9-3-96 tolled the limitation period because the Church's "allegedly fraudulent conduct" was "the gravamen" of Doe's claims and "the [Church's] conduct [was] distinct from the ex-priest's predation." Id. at 719 (McFadden, C. J., concurring in part and dissenting in part).

2. We review de novo a trial court's ruling on a motion to dismiss. See *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 684 (859 SE2d 33) (2021). A motion to dismiss for failure to state a claim cannot be granted unless

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Stendahl v. Cobb County*, 284 Ga. 525, 525 (1) (668 SE2d 723) (2008) (citation and punctuation omitted). In deciding a motion to dismiss,

7

we construe the pleadings in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See id.

A plaintiff who seeks to toll a limitation period under OCGA § 9-3-96 must make three showings: first, that "the defendant committed actual fraud"; second, that "the fraud concealed the cause of action from the plaintiff," such that the plaintiff was debarred or deterred from bringing an action; and third, that "the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation." *Daniel v. Amicalola Elec. Membership Corp.*, 289 Ga. 437, 444-445 (5) (b) (711 SE2d 709) (2011); see also OCGA § 9-3-96 (providing that tolling applies only if a fraud "debarred or deterred [the plaintiff] from bringing an action").

(a) To benefit from tolling under OCGA § 9-3-96, Doe must first establish that the Church committed an actual fraud. See *Daniel*, 289 Ga. at 444-445 (5) (b); see OCGA § 9-3-96. Doing so requires a showing of either "(1) actual fraud involving moral turpitude, or (2) a fraudulent breach of a duty to disclose that exists because of a

8

relationship of trust and confidence." *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 846 (1) (507 SE2d 411) (1998). Here, Doe sufficiently alleged both types of actual fraud in his causes of action for fraudulent misrepresentation and concealment (Counts 9 and 10), which Doe relies on to toll the limitation period for all of his claims.[5]

First, Doe alleged that the Church "knew or should have known that any child in [Father] Edwards'[s] presence was in danger" and

> made false representations to [Doe,] with reckless disregard for the truth, as to the safe and spiritual environment provided within [the church's] walls[,] with the intent of inducing [Doe] to rely on these statements, remain a member of the congregation, and follow and trust priests like [Father] Edwards.

This allegation — that the Church induced Doe's reliance on Father

---

[5] Our decision in *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980), "outlined the two distinct circumstances in which actual fraud will toll the statute of limitation applicable to a cause of action, that is, when the actual fraud is the gravamen of the action, and when it is separate and independent from the action." *Rai v. Reid*, 294 Ga. 270, 272 (1) (751 SE2d 821) (2013). Here, fraud was the gravamen of Doe's claims for fraudulent misrepresentation and concealment, and he contends that the Church's fraudulent misrepresentations and concealment constituted "separate independent actual fraud[s] involving moral turpitude which debar[red] and deter[red] [him] from bringing his" non-fraud claims. *Shipman*, 245 Ga. at 809.

Edwards for safe supervision by affirmatively misrepresenting that Father Edwards was a safe supervisor, despite knowing that he presented a danger to young parishioners — tracks the statutory elements of "legal fraud." See OCGA § 23-2-52 ("Misrepresentation of a material fact, made willfully to deceive or recklessly without knowledge and acted on by the opposite party . . . , constitutes legal fraud."). We cannot say to a legal "certainty" at the motion-to-dismiss stage that Doe could not introduce evidence supporting this contention. *Stendahl*, 284 Ga. at 525 (1). Accordingly, Doe adequately pled actual fraud for purposes of tolling under OCGA § 9-3-96.

Further, even apart from Doe's allegations regarding affirmative misrepresentations, Doe adequately pled actual fraud based on "a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence." *Hunter, Maclean, Exley & Dunn*, 269 Ga. at 846 (1). A "confidential" relationship exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where,

10

from a similar relationship of mutual confidence, the law requires the utmost good faith[.]" OCGA § 23-2-58.

According to Doe's allegations, a confidential relationship between Doe and the Church obligated the Church to disclose to Doe its alleged knowledge of Father Edwards's dangerous predispositions toward children, and its suppression of that information therefore constituted actual fraud. See OCGA § 23-2-53 ("Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties. . . ."). In support of his contention that a confidential relationship existed, Doe alleged that "[the Church] exercised a controlling influence over the will, conduct, and interest of [Doe]" because it "invited and encouraged [him] to participate in the Church activities[,] such as serving as an altar boy[,] jointly administered and controlled by [the Church]," made an "express commitment to developing the spiritual and moral character and integrity of the children entrusted to its care," and had a

11

responsibility "to safeguard [him] and act as a reasonable parent would act" when he attended Church-sponsored Masses, practices, meetings, and overnight trips during a three-year period in the 1970s.

Viewing these allegations in the light most favorable to Doe, as we must at the motion-to-dismiss stage, we cannot say that Doe "could not possibly introduce evidence" establishing the existence of a confidential relationship between Doe and the Church. *Stendahl*, 284 Ga. at 525 (1) (citation and punctuation omitted). We have previously concluded that there are circumstances under which "[i]t can be found that a clergyman occupies a confidential relationship toward a member of his church." *Bryan v. Norton*, 245 Ga. 347, 348 (1) (265 SE2d 282) (1980). We have also explained that "[t]he determination as to whether a confidential relationship exists" under a particular set of facts generally "is a question for the trier of fact." *Stamps v. JFB Properties*, 287 Ga. 124, 126 (694 SE2d 649) (2010). Moreover, courts in other jurisdictions applying similar standards for establishing confidential relationships have concluded

12

that a church may have such a relationship with minor parishioners under similar circumstances. See, e.g., *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F3d 409, 429-430 (II) (2d Cir. 1999) (upholding a jury finding that a confidential relationship existed under Connecticut law between a Catholic Diocese and a minor parishioner, who was allegedly sexually abused by a priest, where the Diocese sponsored the minor-priest relationship knowing that the priest "acted as a mentor and spiritual advisor" and supervised the minor during various church-related activities (punctuation omitted)); *Fortin v. The Roman Catholic Bishop of Portland*, 871 A2d 1208, 1220 (II) (D) (Me. 2005) (concluding that the plaintiff, who was allegedly sexually abused by a priest as a child, adequately alleged a fiduciary relationship with the Catholic Diocese because "[a] child who is both a [parochial school] student and an altar boy is subject to the supervision, control, and authority of the Diocese on a daily basis" and is therefore in "a relationship marked by [a] great disparity of position and influence between the parties" (citation and punctuation omitted)). Accordingly, Doe's

13

pleading was sufficient as to the "actual fraud" requirement for tolling under OCGA § 9-3-96.

(b) Tolling under OCGA § 9-3-96 requires that a plaintiff not only show that a defendant committed an actual fraud but also that the fraud "conceal[ed] a wrong done to a would-be plaintiff so as to deter or debar the would-be plaintiff from his or her cause of action." *Rai*, 294 Ga. at 273 (1). That is, the fraud must in some way "prevent [the cause of action] from being pursued, and therefore, coming into existence." Id.; see also *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 457-458 (c) (504 SE2d 514) (1998) ("The fraud must conceal the cause of action and cut plaintiff off from suing, preclude him, hinder him, shut him out, or exclude him to debar him from bringing suit. . . ."); Webster's Dictionary of the English Language 105, 116 (1878) (defining "debar" as "to cut off from entrance, as if by a bar; to exclude; to deny," and defining "deter" as "to prevent by fear; hence, to hinder, or prevent by opposing motives").[6]

_____

[6] The "debarred or deterred" language in OCGA § 9-3-96 traces back to

14

Here, Doe alleged that the Church's fraudulent conduct debarred or deterred him from bringing suit because it "hinder[ed] [him] from obtaining information necessary to reveal the existence of [his] cause[s] of action." *Charter Peachford*, 233 Ga. App. at 458 (c). Specifically, Doe alleged that he was prevented from discovering that he had causes of action against the Church for knowingly putting him in danger, as opposed to merely against Father Edwards for the alleged sexual abuse, because the Church engaged in a "systematic cover-up effort" to fraudulently conceal from Doe its knowledge that Father Edwards presented a danger to young parishioners like him and made "false representations" that he would be safe under Father Edwards's supervision. According to Doe, he did not know that the Church had wronged him until it publicly acknowledged in 2018 that it knew Father Edwards had been "credibly accused of sexual abuse of a minor."

---

the 1861 Georgia Code. See Code of 1861 § 2872 ("If the defendant, or those under whom he claims, has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud.").

Even taken in the light most favorable to Doe, these allegations are insufficient to support tolling under OCGA § 9-3-96 for Doe's respondeat-superior claim, which sought to hold the Church vicariously liable for Father Edwards's conduct. This is so because the information Doe alleges the Church fraudulently suppressed — its knowledge that Father Edwards was predisposed to abuse children — had no bearing on whether the Church might be vicariously liable for the alleged sexual abuse. A respondeat-superior claim seeks to hold a principal responsible for the negligent conduct of an agent committed in furtherance of the principal's goals and within the scope of the principal's business. See OCGA § 51-2-1 (a) ("For the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent."); *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613 (580 SE2d 215) (2003) ("Two elements must be present to render a master liable under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be

acting within the scope of his master's business." (citations and punctuation omitted)). Here, Doe's respondeat-superior claim is premised on allegations that the Church employed Father Edwards to supervise altar boys like Doe and that Father Edwards was supervising Doe and "acting within the course and scope of his role as a member of [the] clergy" when he sexually abused Doe. Setting aside the merits of such a claim,[7] these allegations demonstrate that Doe would have known the essential facts giving rise to a potential respondeat-superior claim against the Church in the late 1970s, when the abuse allegedly occurred. Because suppression of information about whether the Church knew Father Edwards was dangerous in the 1970s could not have hindered an attempt to hold the Church vicariously liable for Father Edwards's conduct once Doe reached the age of majority in the 1980s, the Court of Appeals majority correctly affirmed the dismissal of the respondeat-superior

---

[7] See *Piedmont Hosp.*, 276 Ga. at 614 ("Georgia courts have consistently held that an employer cannot be held liable under respondeat superior for an employee's sexual misconduct when the alleged acts were not taken in furtherance of the employer's business and were outside the scope of employment.").

claim as time-barred.

We cannot say the same with respect to Doe's claims against the Church for negligent training, supervision, and retention, failure to warn and provide adequate security, breach of fiduciary duty, and fraudulent misrepresentation and concealment. The Court of Appeals majority reasoned incorrectly that the alleged abuse itself would have revealed to Doe that the Church had wronged him. See *Doe*, 357 Ga. App. at 714-715 (1) (c). Accordingly, the majority erroneously concluded that the Church's alleged fraudulent concealment of its knowledge that Father Edwards was dangerous to children did not prevent Doe from discovering and pursuing his claims against the Church. See id.

However, the elements of Doe's potential claims against Father Edwards and the Church were distinct. As a result, the fact that Doe knew of information supporting a potential claim against Father Edwards did not necessarily mean that Doe would have known of potential causes of action against the Church. See *Daniel v. Georgia R. Bank & Trust Co.*, 255 Ga. 29, 31 (334 SE2d 659) (1985)

18

("Various causes of action in tort arising from the same set of facts may commence running at different times depending on the nature of the several causes of action involved[.]").

A key distinction between claims Doe might have had against Father Edwards for sexual abuse and those he asserted against the Church is that the latter claims, with the exception of the respondeat-superior claim, each require a showing that the Church knew or should have known that Father Edwards presented a danger to young parishioners like Doe, which is the very fact that Doe alleges the Church fraudulently concealed. Specifically, Doe's claims against the Church for negligent training, supervision, and retention each require a showing that the Church had actual or constructive knowledge of the danger that resulted in Doe's injury, namely, Father Edwards's dangerous predispositions toward children. See *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 190-191 (4) (718 SE2d 304) (2011) ("For an employer to be held liable for negligent supervision, there must be sufficient evidence to establish that the employer *reasonably knew or should have known of an*

19

*employee's tendencies* to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." (citations and punctuation omitted; emphasis supplied)); *Advanced Disposal Svcs. Atlanta v. Marczak*, 359 Ga. App. 316, 319 (2) (857 SE2d 494) (2021) ("To establish a negligent training claim, a plaintiff must demonstrate that inadequate training caused a *reasonably foreseeable* injury." (emphasis supplied)); OCGA § 34-7-20 (noting that, for purposes of a negligent-retention claim, "[an] employer is bound to exercise ordinary care in the selection of employees and not to retain them after *knowledge of incompetency*" (emphasis supplied)); *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004) ("[A]n employer may be held liable [for negligent hiring or retention of an employee] only where there is sufficient evidence to establish that the employer *reasonably knew or should have known of an employee's 'tendencies'* to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." (citation omitted; emphasis supplied)).

Likewise, Doe's claims against the Church for failure to warn

and provide adequate security on the premises require a showing that the Church knew or should have known about Father Edwards's alleged history of sexual abuse, so that it could reasonably foresee that he presented a danger to young parishioners. See *Johnson St. Properties v. Clure*, 302 Ga. 51, 53-54 (1) (a) (i) (805 SE2d 60) (2017) (noting that an "owner/occupier [of land] is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge" by virtue of "actual or constructive notice" (citation and punctuation omitted)); *Benson-Jones v. Sysco Food Svcs. of Atlanta*, 287 Ga. App. 579, 584 (3) (651 SE2d 839) (2007) ("As a general rule, an owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers which he was aware of, or in the exercise of reasonable care should have known." (citation and punctuation omitted)); see also *Doe v. Prudential-Bache/A.G. Spanos Realty Partners*, 268 Ga. 604, 605 (492 SE2d 865) (1997) (noting that "a landlord only has a duty to protect tenants from the criminal attacks of third parties if those

21

attacks are foreseeable," and that "substantially similar" criminal acts may "establish the foreseeability of [a] risk" (citation and punctuation omitted)).

Finally, Doe's breach-of-fiduciary-duty, fraudulent-misrepresentation, and fraudulent-concealment claims each require a showing that the Church misrepresented or concealed its knowledge of "a material fact" — here, the Church's knowledge that Father Edwards was dangerous to children. See OCGA §§ 23-2-53 ("Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."); 51-6-2 (a) ("Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action."); 51-6-2 (b) ("In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort."); *Windjammer Assoc. v. Hodge*, 246 Ga. 85, 86 (269 SE2d 1) (1980) (holding that a fraudulent-concealment claim requires proof that the

22

defendant knew of the alleged falsity); see also *Lloyd v. Kramer*, 233 Ga. App. 372, 374-375 (1)-(2) (503 SE2d 632) (1998) (holding that, because the evidence could support a finding that the defendant-podiatrist knowingly made material misrepresentations to the plaintiff-patient, the trial court erred in granting summary judgment to the defendant on the plaintiff's claims for both fraud and breach of fiduciary duty); *Garcia v. Unique Realty & Prop. Mgmt. Co.*, 205 Ga. App. 876, 878 (2) (424 SE2d 14) (1992) (holding that "the trial court correctly granted summary judgment to [the] appellees on [a] claim for breach of fiduciary duty" because the "appellees cannot be held liable for failing to disclose what they did not know and could not have foretold").

In sum, aside from the respondeat-superior claim, each of Doe's claims against the Church turns on whether the Church knew or had reason to know that Father Edwards presented a danger to Doe. Contrary to the opinion of the Court of Appeals majority, the fact that Doe knew he had been sexually abused by Father Edwards did not necessarily mean that he had any information about what the

Church knew at the time. Accordingly, at the motion-to-dismiss stage, we cannot rule out the possibility that Doe could introduce evidence showing that the Church's alleged fraudulent concealment of its knowledge about Father Edwards "debarred or deterred" Doe from discovering his causes of action against the Church for negligent training, supervision, and retention, failure to warn and provide adequate security, breach of fiduciary duty, and fraudulent misrepresentation and concealment. OCGA § 9-3-96; see also *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 694 (577 SE2d 864) (2003) (concluding that a trust beneficiary had adequately alleged that the trustee's failure to disclose the existence of the trust, the assets of the trust, the trust activity, and its failure to comply with the trust's terms "debarred or deterred [the beneficiary] from bringing an action to recover assets from a trust she was not made aware existed").

(c) As a final requirement for tolling under OCGA § 9-3-96, a plaintiff must show that he "exercised reasonable diligence to discover his cause of action despite his failure to do so within the

24

statute of limitation." *Daniel*, 289 Ga. at 445 (5) (b). Fraud will toll the limitation period only "until the fraud is discovered or by reasonable diligence should have been discovered." *Shipman v. Horizon Corp.*, 245 Ga. 808, 808 (267 SE2d 244) (1980). "'[R]easonable diligence' cannot be measured by a subjective standard, but, rather, must be measured by the 'prudent man' standard[,] which is an objective one." *Jim Walter Corp. v. Ward*, 245 Ga. 355, 357 (265 SE2d 7) (1980).

The Church argues that Doe could not introduce evidence supporting a finding of reasonable diligence, given his decades-long delay in bringing suit. Based on Doe's allegations, however, we are unpersuaded that Doe "could not possibly introduce evidence within the framework of the complaint" to show that he exercised reasonable diligence to discover the Church's fraud. *Stendahl*, 284 Ga. at 525 (1) (citation and punctuation omitted).

As an initial matter, a lower standard of diligence may apply to Doe. As discussed in Division 2 (a) above, Doe adequately alleged that a confidential relationship existed between him and the Church

25

when he was an altar boy.  We have explained that "[f]ailure to exercise reasonable diligence to discover the fraud may be excused where a relationship of trust and confidence exists between the parties."  *Shipman*, 245 Ga. at 808-809.  That is, "[w]here a confidential relationship exists, a plaintiff does not have to exercise the degree of care to discover fraud that would otherwise be required" and instead has "a lessened duty . . . to discover what should be discoverable through the exercise of ordinary care." *Hunter, Maclean, Exley & Dunn*, 269 Ga. at 848 (1).  Doe's complaint does not describe what relationship, if any, Doe maintained with the Church after he stopped serving as an altar boy, and it is possible that his alleged confidential relationship ended at that point or at a later time.  See *McClure v. Raper*, 266 Ga. 60, 60 (1) (463 SE2d 125) (1995) ("A failure to exercise ordinary diligence may be excused when there exists an ongoing relationship of trust and confidence that deters the discovery of the fraud.  The fact that the parties once were guardian and ward, however, may not forever excuse the former ward from the duty to exercise the required degree of

26

diligence." (citation omitted)).[8]   However, the "framework of the complaint" leaves open the possibility that Doe could produce evidence that a confidential relationship with the Church continued after that point in time.  *Stendahl*, 284 Ga. at 525 (1) (citation and punctuation omitted).  Thus, at this stage of the proceedings, Doe's allegations need satisfy only the lesser duty of diligence to investigate his claims.[9]

In any event, Doe alleged facts suggesting that the Church's active concealment efforts would have thwarted any attempt by him to discover the Church's alleged knowledge about Father Edwards's dangerous predispositions toward children.   See *Bahadori v. Nat.*

---

[8] Although Doe alleges that he "experienced a loss of faith and spirituality" at some unspecified point, his amended complaint does not indicate what effect, if any, that had on his relationship with Saint Joseph's or the Archdiocese.

[9] On this issue, Doe cites a case in which the Court of Appeals stated that, in evaluating tolling under OCGA § 9-3-96, the question is whether the plaintiff and defendant had a confidential "relationship when the fraud occurred," rather than "the status of the relationship when the fraud concealing a cause of action is finally discovered." *Goldston*, 259 Ga. App. at 696.  That is true with respect to whether there was actual fraud, but not as to whether the plaintiff exercised proper diligence to discover the fraud.  In this respect, we note that *Goldston* did not specifically discuss diligence or cite *McClure*.

*Union Fire Ins. Co.*, 270 Ga. 203, 206 (3) (507 SE2d 467) (1998) ("[W]here the fraud of an employee and his employer thwarts an insurer's reasonably diligent investigation, the time within which the insurer could controvert the claim is tolled."). Specifically, Doe alleged that the Church engaged in a "systematic cover-up effort" and an "elaborate scheme to actively conceal [Father] Edwards's crimes and the prevalence of child sexual abuse by priests." As a result of the Church's concealment efforts, Doe alleged, he could not "independently" obtain information about the danger Father Edwards posed "by any reasonable diligence." Viewed in the light most favorable to Doe, these allegations imply that any effort to discover the Church's knowledge of the danger posed by Father Edwards would have been futile. In other words, Doe alleged that there was no point prior to November 2018, when the Church disclosed credible allegations against Father Edwards, that the Church's fraud "should have been discovered" by "reasonable diligence." *Shipman*, 245 Ga. at 808.

Further, although Doe's amended complaint did not identify

28

what specific actions, if any, he took to discover the Church's alleged fraud, it included one allegation suggesting that he attempted to find information that might have revealed the Church's knowledge about Father Edwards's dangerous predispositions toward children. Specifically, he alleged that "he discovered that he was not [Father] Edwards'[s] only victim," "that multiple children had been abused by [Father] Edwards over multiple years," and "that [the Church] did nothing to protect him or the other victims." But he alleged that he made this discovery "within the statutory period," meaning within two years before he filed suit, so that even if the tolling provided by OCGA § 9-3-96 ended at that point, his claims would still be timely.

What else Doe did, or did not do, to discover the Church's alleged fraud in the decades between the time he became an adult and November 2018 will affect the ultimate determination of diligence for purposes of tolling under OCGA § 9-3-96. In reviewing a motion to dismiss, however, we need determine only whether it is not possible that Doe could later introduce evidence supporting his

reasonable diligence. See *Stendahl*, 284 Ga. at 525 (1). We therefore

conclude that Doe adequately pled reasonable diligence for purposes

of tolling under OCGA § 9-3-96. See *Redwing v. Catholic Bishop for*

*the Diocese of Memphis*, 363 SW3d 436, 466 (IV) (B) (Tenn. 2012)

("The allegations involving the Diocese's active concealment of its

knowledge of Fr. Guthrie's activities and its efforts to mislead Mr.

Redwing could, if proven, provide a basis for a reasonable fact-finder

to conclude that Mr. Redwing, lacking any basis for suspecting that

the Diocese would deceive him, acted with reasonable diligence. . .

.").[10]

---

[10] This is not a case where the allegations in the complaint establish as a matter of law that the plaintiff could have easily discovered the fraud alleged from a readily available public source, that the plaintiff in fact knew about the alleged fraud when it occurred, or that the plaintiff was on clear notice that the defendant had defrauded him. See, e.g., *Anthony v. American Gen. Financial Svcs.*, 287 Ga. 448, 461 (4) (697 SE2d 166) (2010) (holding at the motion-to-dismiss stage that tolling under OCGA § 9-3-96 did not apply because "simple reference to . . . the readily-available Georgia Code" would have revealed the defendant's misrepresentations, and thus the plaintiffs "were not prevented from subsequently discovering the impropriety of" the defendant's actions); *HealthPrime v. Smith/Packett/Med-Com*, 428 Fed. Appx. 937, 943-944 (III) (B) (11th Cir. 2011) (holding on a motion to dismiss that the defendant shareholders' alleged fraudulent failure to equally distribute the proceeds from a property sale with the plaintiff shareholders could not toll the limitation period for claims arising from the distribution because the allegations established that the plaintiffs were fully aware of, and objected to, the defendant's distribution plan in advance); *Cochran Mill Assoc. v. Stephens*,

3. For the reasons stated above, we conclude that the trial court properly dismissed as time-barred Doe's respondeat-superior claim against the Church (Count 7).  However, because Doe might be able to introduce evidence supporting tolling under OCGA § 9-3-96 as to his claims for negligent training and supervision (Count 3), negligent retention (Count 4), failure to warn (Count 5), failure to provide adequate security (Count 6), breach of fiduciary duty (Count 8), and fraudulent misrepresentation and concealment (Counts 9 and 10), we conclude that the trial court erred in dismissing those claims as time-barred.  Consequently, we affirm in part and reverse in part the Court of Appeals' judgment affirming the trial court's order dismissing Counts 3-10 of Doe's amended complaint.[11]

*Judgment affirmed in part and reversed in part.  All the Justices concur, except Peterson, J., disqualified.*

---

286 Ga. App. 241, 247 (2) (648 SE2d 764) (2007) (holding on a motion to dismiss that fraud could not toll a statute of limitation because the plaintiffs "were clearly put on notice of [the] alleged mismanagement of the partnership's affairs" long before the limitation period expired).

[11] We emphasize that we are not deciding the merits of any of Doe's remaining claims or of his tolling claim or whether those claims might survive a motion for summary judgment or a trial.  Those decisions will turn on what evidence is ultimately presented rather than on the allegations Doe has made in his amended complaint.

Decided March 8, 2022 — Reconsideration denied March 30, 2022.

Certiorari to the Court of Appeals of Georgia — 357 Ga. App. 710.

*Bondurant Mixson & Elmore, Michael B. Terry, Jane D. Vincent; Penn Law, Darren W. Penn, Alexandra S. Cole*, for appellant.

*Smith Gambrell & Russell, Edward H. Wasmuth, Jr.*, for appellees.

*Melina D. Lewis, Emily M. Hetherington*, amici curiae.