NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 9, 2025

S25A1240.  CHESTNUT RIDGE, LLC v. HALL COUNTY BOARD OF TAX ASSESSORS.

McMILLIAN, Justice.

Chestnut Ridge, LLLP[1] challenges the trial court's ruling that it breached a conservation use value assessment ("CUVA") covenant for its property by selling a portion of the land to an owner that did not apply to continue the covenant. On appeal, Chestnut Ridge argues that the trial court erred in granting summary judgment to the Hall County Board of Tax Assessors (the "Board") because (1) the Board was required to conduct a physical inspection of the property prior to declaring a breach and assessing a penalty; (2) OCGA § 48-5-7.4(l) violates the due process clause of the Georgia Constitution on the ground of vagueness; and (3) the covenant was

---

[1] Although originally captioned as an LLC, the parties agree Chestnut Ridge is actually an LLLP.

a renewal, such that the less severe penalty provision in OCGA § 48-5-7.4(x), rather than OCGA § 48-5-7.4(l), applies. As explained below, the trial court, and consequently this Court, lack jurisdiction to consider Chestnut Ridge's constitutional challenge, so we must vacate that portion of the trial court's order and remand for further proceedings consistent with this opinion.

The record shows that in March 2005, Bartow Morgan, Jr., purchased a 59.3-acre tract of land on Lake Lanier. Three months earlier, the prior owner had applied for and received a CUVA covenant for 58.3 acres pursuant to OCGA § 48-5-7.4. Under that statute, qualified property owners can enter into a covenant with their local taxing authority to maintain the property for conservation use for a mandatory period of ten years. See OCGA § 48-5-7.4(d). In exchange, the property owner gains the benefit of a preferential ad valorem tax assessment by allowing for the property to be assessed at 40 percent of its current use value rather than 40 percent of its fair market value. See OCGA § 48-5-7(c.2).

In July 2022, Chestnut Ridge sold 43.05 acres of the property to Athletic Club Drive, LLC.[2] On January 13, 2023, the Board sent notices to Chestnut Ridge and Athletic Club Drive stating that if Athletic Club Drive did not apply to continue the covenant on its portion of the property by April 1, 2023, it would result in a breach and corresponding penalties.[3] Athletic Club Drive did not apply by the deadline, and the Board sent notices to both owners on May 2, 2023, entitled "Notice of Intent to Assess Penalty for Breach of a Conservation Use Covenant." This notice stated it was sent in accordance with OCGA § 48-5-7.4(k.1)[4] to notify the owners of the

---

[2] The sole member of this LLC appears to be a citizen of the United Kingdom.

[3] The letter notes that "proof of US Citizenship is required when the application is filed." The Board also exchanged emails with Chestnut Ridge's counsel regarding what would be required to avoid a breach.

[4] This subsection provides in pertinent part:

> In the case of an alleged breach of the covenant, the owner shall be notified in writing by the board of tax assessors. The owner shall have a period of 30 days from the date of such notice to cease and desist the activity alleged in the notice to be in breach of the covenant or to remediate or correct the condition or conditions alleged in the notice to be in breach of the covenant. Following a physical inspection of property, the board of tax assessors shall notify the owner that such activity or activities have or have not properly ceased or that the condition or conditions have or have not been remediated or corrected.

Board's intent "to assess a penalty for breach of the covenant entered into beginning in tax year 2015." The Board explained that Athletic Club Drive was required to sign a covenant application agreeing to continue the existing covenant by June 1, 2023.[5] Thereafter, Chestnut Ridge and Athletic Club Drive received their respective 2023 property tax statements from the Hall County Tax Commissioner: $524,820 for Chestnut Ridge ($519,632.14 attributed to the breach) and $79,651.03 for Athletic Club Drive ($52,061.20 attributed to the breach).[6] Athletic Club Drive paid its portion of the penalty.

On October 2, 2023, Chestnut Ridge's counsel notified the Board that no physical inspection of the property had occurred. Counsel stated, however, that, without waiving any objections, Chestnut Ridge considered the property tax statement to be the

---

[5] The letter also notes that Athletic Club Drive is an LLC and that "proof of US Citizenship (birth certificate or passport) is required for each person that has an interest in the corporation to verify citizenship when the application is filed."

[6] Although it is unclear when these property tax statements were sent, a letter from Chestnut Ridge's counsel dated October 2, 2023, references the tax statement as received.

Board's notification that the "activity or activities constituting the alleged breach have or have not been properly ceased or that the condition or conditions constituting the alleged breach have not been remediated or corrected." Chestnut Ridge also requested an appeal with the Hall County Board of Equalization ("BOE") to dispute the Board's findings.

On March 26, 2024, the BOE denied Chestnut Ridge's appeal, and Chestnut Ridge timely appealed that decision to the Superior Court of Hall County pursuant to OCGA § 48-5-311(g). The Board moved for summary judgment, asserting that Chestnut Ridge had breached the covenant and that the imposition of a penalty was proper. Chestnut Ridge filed a cross-motion for summary judgment, arguing that the Board's attempt to impose the penalty was improper because the Board failed to complete the statutorily required steps, that OCGA § 48-5-7.1(l) is unconstitutionally vague, and that the Board relied on the wrong statutory subsection to improperly double the amount of the penalty. The trial court granted summary judgment to the Board on all issues raised, and this appeal

5

followed.[7]

1.      It initially appeared that this Court had jurisdiction over this appeal because it involved a novel constitutional question, i.e., whether OCGA § 48-5-7.4(l) violates the due process clause of the Georgia Constitution on the ground of vagueness. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II(1). However, the Board has now raised for the first time on appeal a challenge to the trial court's subject-matter jurisdiction with respect to this claim.[8] Specifically, the Board asserts that Chestnut Ridge failed to serve the Attorney General with a copy of the proceeding pursuant to OCGA § 9-4-7(c). In response, Chestnut Ridge argues that this service requirement applies only to declaratory judgment actions and does not apply to a special statutory proceeding like the one at issue here.[9] We are not persuaded.

---

[7] The case was orally argued on October 23, 2025.

[8] The lack of subject-matter jurisdiction can be raised at any time. See *State v. Federal Defender Program, Inc.*, 315 Ga. 319, 343 (2022).

[9] OCGA § 48-5-311(g) sets out in detail the process by which a taxpayer can appeal a decision of the BOE by a petition for review in the superior court, which Chestnut Ridge has relied upon in challenging the tax assessment.

Originally enacted in 1945, the previous version of OCGA § 9-4-7 provided:

> No declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding involving the validity of a municipal ordinance or franchise, such municipality shall be made a party and shall be entitled to be heard as a party. If a statute of the State, any order or regulation of any administrative body of the State, or any franchise granted by the State is alleged to be unconstitutional, the Attorney General of the State shall be served with a copy of the proceeding and shall be entitled to be heard.

Ga. L. 1945, p. 137 § 6.

In analyzing the effect of this statute, we have held that the failure to serve the Attorney General means that the trial court lacks subject-matter jurisdiction to resolve the constitutional claim. See *Williams v. Kaylor*, 218 Ga. 576, 578 (1963) (adopting position of majority of appellate courts throughout the country that "where service is not made on the attorney general as required by the declaratory judgments statutes in a case where there is an attack made upon the constitutionality of a statute enacted by the general assembly of the state, the court to which the petition is addressed

7

does not have jurisdiction of the subject matter of the case, the subject matter being whether the statute in question is constitutional"). We have acknowledged, however, that the statute does not provide how or when the Attorney General is to be served, as long as the Attorney General has notice of the challenge and an opportunity to be heard on the constitutional claim before it is ruled upon.[10] See *Daniel v. Amicalola Elec. Membership Corp.*, 289 Ga. 437, 440–41 (2011) (explaining that the service requirement intends to ensure that the State has the opportunity to defend its laws in court before they are declared invalid and that service on the Attorney General, although not required in the case, at the summary judgment stage was sufficient).

Although this version of the statute is silent on which actions it applied to, this Court has consistently held over the years that, because the service requirement is included in Georgia's Uniform Declaratory Judgments Act,[11] it applied only in declaratory

---

[10] The statute also does not require that the notice of service be filed in the record. See *Daniel*, 289 Ga. at 440.

[11] See OCGA §§ 9-4-1 through 9-4-9.

judgment actions challenging the constitutionality of a statute. See, e.g., *Daniel v. Federated Nat'l Mtg. Ass'n*, 231 Ga. 385, 387 (1973) ("There is no law on the statute books in Georgia of which this court is aware, and none has been cited by counsel, which requires such service upon the Attorney General in other than declaratory judgment proceedings."); *Woodes v. Morris,* 247 Ga. 771, 774 (1981) (holding that service requirement applied to declaratory judgment actions and did not apply to appeals to a superior court from a probate court, even if the constitutionality of a statute was at issue); *Daniel*, 289 Ga. at 440 (holding that service requirement did not apply where property owners had filed declaratory judgment action to determine whether utility easement existed on their property and only later asserted unconstitutionality of a statute that was raised by the utility as a defense).

However, in 2022, the General Assembly amended OCGA § 9-4-7(c) to read:

> If an Act of the General Assembly, a statute of the state, any order or regulation of any administrative body of the state, or any franchise granted by the state is alleged in

9

an action for declaratory judgment *or as a part of any other action* to be unconstitutional or otherwise invalid, the Attorney General of the state shall be served with a copy of the proceeding and shall be entitled to be heard in defense of said Act, statute, order, regulation, or franchise, which may include appearing as a party as of right as he or she determines is appropriate.

See Ga. L. 2022, p. 13 § 1 (emphasis added).

We begin by noting that, "[w]hen the General Assembly changes the language of a statute, that typically signals an intent to change the meaning of the statute." *Allen v. State*, 319 Ga. 415, 419 n.6 (2024). And when construing a statute, "we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294. Ga. 170, 172 (2013) (citation and punctuation omitted). In doing so, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way." Id. at 172–73 (citations and punctuation omitted). When applying these principles, "if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an

10

end." Id. at 173 (punctuation omitted).

Here, the statute's relevant language is clear and unambiguous: when "a statute … is alleged in an action for declaratory judgment or as a part of any other action to be unconstitutional …, the Attorney General of the state shall be served with a copy of the proceeding." OCGA § 9-4-7(c). Thus, by its plain terms, the service requirement applies whenever a statute is alleged to be unconstitutional in an action for declaratory judgment *or as a part of any other action,* regardless of whether there is a claim for declaratory judgment.

The question then is what it means to be "a part of any other action." "Action" is broadly defined under OCGA § 9-2-1 as "the judicial means of enforcing a right." See also OCGA § 9-11-2 ("There shall be one form of action, to be known as 'civil action.'"). Because the special statutory proceeding here is a "judicial means of enforcing a right" and a "civil action," this action is subject to the service requirement whenever a party argues that a statute is unconstitutional as a part of the proceedings. See OCGA § 9-4-7(c).

11

We recognize that it may have been difficult for parties to a tax dispute to readily appreciate the impact of this statutory amendment. However, our law provides that, "[a]fter [statutes] take effect, the laws of this state are obligatory upon all the inhabitants thereof. Ignorance of the law excuses no one." OCGA § 1-3-6. At oral argument, Chestnut Ridge conceded that it had not served the Attorney General with a copy of the proceeding before the trial court ruled on its constitutional challenge to OCGA § 48-5-7.4(l). Accordingly, the trial court was without subject-matter jurisdiction to decide the constitutional issue. See *Plantation Pipe Line Co. v. City of Bremen*, 225 Ga. 607, 608 (1969) (holding that the trial court was without jurisdiction to render any judgment except one of dismissal where the Attorney General was not served with a copy of the proceeding).

2. For the reasons set forth in Division 1, we vacate that portion of the trial court's order as to its ruling on the constitutional question. We remand the case to the trial court so that Chestnut Ridge will have the opportunity to serve the Attorney General under

12

OCGA § 9-4-7(c) with a copy of the proceeding and give the Attorney General the chance to appear and defend the constitutionality of the statute should he wish to do so. See *Daniel*, 289 Ga. at 440–41 (service requirement was met when at summary judgment hearing, defendant first complained about lack of compliance with service requirement; the Attorney General was served the next day; and the trial court waited for five months before ruling on the summary judgment motion). In doing so, we express no opinion as to Chestnut Ridge's remaining, non-constitutional challenges.[12]

*Judgment vacated in part and case remanded for further proceedings. All the Justices concur.*

---

[12] This opinion should also not be read to impair Chestnut Ridge's ability to raise these non-constitutional challenges in a subsequent appeal, if any.