**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 9, 2026**

# In the Court of Appeals of Georgia

A25A1760. DOE v. ARCHDIOCESE OF ATLANTA et al.
A25A1785. DOE 4 et al. v. ARCHDIOCESE OF ATLANTA et al.
A25A1786. DOE 3 v. ARCHDIOCESE OF ATLANTA et al.
A25A1787. DOE v. ARCHDIOCESE OF ATLANTA et al.
A25A1788. DOE v. ARCHDIOCESE OF ATLANTA et al.
A25A1789. DOE v. ARCHDIOCESE OF ATLANTA et al.
A25A1790. DOE v. ARCHDIOCESE OF ATLANTA et al.
A25A1791. DOE v. ARCHDIOCESE OF ATLANTA et al.
A25A1792. DOE v. ARCHDIOCESE OF ATLANTA et al.
A25A1794. SIMMONS v. ARCHDIOCESE OF ATLANTA et al.
A25A1848. DOE 2 v. ARCHDIOCESE OF ATLANTA et al.
A25A1849. DOE 2. v. ARCHDIOCESE OF ATLANTA et al.

DAVIS, Judge.

Father John Douglas Edwards and Father Jorge Humberto Cristancho were former Catholic priests at various parishes within the Archdiocese of Atlanta who committed numerous acts of sexual misconduct against young children over many

decades. These appeals are brought by twelve alleged victims[1] of Edwards and Cristancho after the trial court granted the Defendants'[2] motion for summary judgment on statute of limitations grounds. On appeal, the Plaintiffs argue that the trial court erred by (1) granting the Defendants' motion for summary judgment; (2) concluding that the Plaintiffs' claims were not tolled for fraud; (3) concluding that the Plaintiffs' duty to exercise due diligence to investigate potential claims increased when their confidential relationship with the Defendants ended; (4) determining that the Plaintiffs did not exercise due diligence to discover the Defendants' fraud; (5) determining that the Defendants did not engage in any affirmative acts of deception after the Plaintiffs reached adulthood; (6) concluding that the Plaintiffs were not

---

[1] The Plaintiffs in these cases are: Robert Simmons, Phillip Doe, William Doe, Michael Doe, Michael Doe 2, Robert Doe, Peter Doe, David Doe, John Doe, and John Does 2, 3, and 4. For ease of reference, they will be referred to collectively as the "Plaintiffs."

[2] The Defendants in these actions are the Archdiocese of Atlanta and several parishes including Saint Joseph's Catholic Church, Saint Michael's Catholic Church, Saint Catherine of Siena Catholic Church, Saint Jude the Apostle Catholic Church, Our Lady of Perpetual Help Catholic Church, Saint Thomas More Catholic Church, Saint Pius X Catholic Church, and Saint Anthony Catholic Church. For ease of reference, they will be referred to collectively as "the Defendants." Archbishops Wilton Gregory and Gregory Hartmayer were also named as defendants, but the Plaintiffs have dismissed their claims against them.

deterred from filing their suit; (7) concluding that certain news articles put the Plaintiffs on notice to investigate potential claims; and (8) determining that any investigation into the Defendants' wrongdoing would not have been futile. After careful consideration of the record and the relevant law, we affirm the trial court's orders granting the Defendants' motion for summary judgment in all cases.

"On appeal from a grant of summary judgment, we review legal questions de novo and review the evidence in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact." *Gila, LLC v. Kapsch Trafficcom USA, Inc.*, 375 Ga. App. 843, 844 (917 SE2d 842) (2025).

So viewed, the record shows the following. Father John Douglas Edwards and Father Jorge Humberto Cristancho were former priests at various parishes of the Archdiocese of Atlanta. Edwards passed away in November 1997, and Cristancho was removed from the ministry in 2003. The Plaintiffs, who are former altar servers or parishioners, allege that they were sexually abused as minors by Edwards or Cristancho in the 1960s, 1970s, 1980s, and in the early 2000s at various parishes or other locations. According to the Archdiocese's records, the Archdiocese knew that Edwards had engaged in "sexual misconduct" with young males 18 months after his

ordination in 1961, and had engaged in other acts of improper sexual conduct in the years thereafter, which resulted in Edwards having to be transferred to various parishes. The Archdiocese also knew that Cristancho had engaged in sexual misconduct on multiple occasions in the 1980s, and the Archdiocese also transferred him to multiple parishes. But before 2018, the Archdiocese did not disclose its knowledge of the accusations of sexual misconduct involving Edwards and Cristancho. Catholic regulations previously required documentation pertaining to sexual abuse allegations to be kept in secret archives, which was a "secure[d] place."[3] An archivist for the Archdiocese testified that the Archdiocese did not have any files for Edwards or Cristancho in the secret archives room, but the record contains some documentation to show that on at least one occasion in December 2005, Archbishop Gregory directed that a letter regarding Cristancho's misconduct be placed "in the secret archives of the Curia."

In a March 2002 article, Archbishop John Donoghue outlined the procedures for child sexual abuse allegations that were instituted after a priest's arrest in 1988, which included the obligation to inform civil authorities of the allegations and for the

---

[3] Pope Francis later modified the policy.

Archdiocese to "cooperate fully" in the investigations. In February 2004, the Archdiocese announced the results of a "quantitative analysis" of sexual abuse of minors by clergy members from 1950 to 2002, which was undertaken by the United States Conference of Catholic Bishops. The report stated that from 1950 to 2002, the Archdiocese had received allegations from 25 people regarding sexual abuse by 13 clergy members. The report did not list the names of the clergy members involved, but it listed the status of those clergy members, any disciplinary action that had been taken, and the total fees that had been paid to the alleged victims.

Also in 2004, the Archdiocese established a victim assistance program to engage and aid victims of sexual abuse, encourage them to report sexual abuse, and it established a 1-800 number service for victims to contact them. Then, in November 2018, the Archdiocese released a list of priests, deacons, and seminarians who had been "credibly accused of sexual abuse of a minor," and Edwards and Cristancho were among those listed. Before 2018, however, none of the Plaintiffs investigated whether other victims accused Edwards or Cristancho of sexual abuse, whether the Defendants knew of the abuse, whether Edwards or Cristancho had been the subject of any disciplinary action, or whether they had grounds to file a lawsuit.

Phillip Doe filed suit in December 2018 against the Defendants, asserting claims for nuisance, failure to train, supervise, and monitor, negligent retention, failure to warn, failure to provide adequate security, respondeat superior/vicarious liability, breach of fiduciary duty, fraudulent misrepresentation and fraudulent concealment, a violation of Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") statute (OCGA § 16-4-4), punitive damages, attorney fees, and injunctive relief. The Defendants collectively answered the complaint, and they filed a motion to dismiss, arguing that the claims for failure to train, supervise, and monitor, negligent retention, failure to warn, failure to provide adequate security, respondeat superior/vicarious liability, and breach of fiduciary duty were due to be dismissed because they were time-barred. They further argued that the nuisance claims were subject to dismissal because Doe failed to state a claim upon which relief could be granted, and they argued that the fraud and RICO claims were time barred and were not tolled by the statute of limitations. The trial court granted the motion, determining that the negligence, breach of fiduciary duty, and fraud claims were barred by the statute of repose and that the negligence and breach of fiduciary duty claims were also barred by the statute of limitations. The trial court further determined that the RICO and fraud

claims were also barred by the statute of limitations and that the nuisance claims were subject to dismissal for failure to state a claim upon which relief could be granted.

On appeal, we affirmed the trial court's order,[4] but the Supreme Court of Georgia partially reversed our decision. *Doe v. Saint Joseph's Catholic Church*, 313 Ga. 558 (870 SE2d 365) (2022) ("*Doe II*"). Specifically, the Court concluded that although Doe's vicarious liability claim was time-barred, we erred in our determination that Doe could not introduce evidence within the framework of his complaint to toll the statute of limitation for his negligent training and supervision, negligent retention, failure to warn and provide adequate security, breach of fiduciary duty, and fraudulent misrepresentation and concealment claims. Id. at 559.[5]

During Phillip Doe's proceedings, the remaining Plaintiffs filed their complaints against the Defendants, asserting similar claims for failure to train, supervise, and monitor, negligent retention, failure to warn, failure to provide adequate security, breach of fiduciary duty, fraudulent misrepresentation and

---

[4] *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710 (850 SE2d 267) (2020) ("*Doe I*").

[5] The Court expressly declined to address our ruling pertaining to the nuisance and RICO claims because the certiorari question was limited to the non-nuisance tort claims. *Doe II*, 313 Ga. at 559 n.3.

fraudulent concealment, punitive damages, and attorney fees and expenses.[6] The

Defendants answered the complaints[7] and filed motions for summary judgment,

arguing that no genuine issue of material fact remained on the Plaintiffs' claims

because the claims were barred by the statute of limitation. In response, the Plaintiffs

argued that summary judgment was improper because genuine issues of material fact

existed as to whether the statute of limitations was tolled. In support of their motion,

they presented an affidavit from Dr. David Corwin who opined that "victims of child

sexual abuse often delay or never disclose their childhood and adolescent sexual

victimization[,]" and that "[t]his is even more so for male victims of child sexual

abuse compared to female victims." The trial court granted the motions following a

hearing, concluding that the Plaintiffs failed to put forth evidence to create an issue

---

[6] John Doe 4 also asserted a claim for negligent infliction of emotional distress. Additionally, all of the Plaintiffs, except John Doe 4, asserted claims for nuisance, vicarious liability, violations of Georgia's RICO statute, and injunctive relief. As stated above, in Phillip Doe's case, the trial court dismissed the nuisance and RICO claims, and our Supreme Court affirmed the dismissal of his vicarious liability claim. *Doe II*, 313 Ga. at 564–65(2)(b). In granting summary judgment, the trial court determined that summary judgment was also proper on the nuisance, RICO, and vicarious liability claims in light of the prior ruling and the Supreme Court's partial affirmance of the order on the motion to dismiss. The Plaintiffs do not challenge that ruling in these appeals.

[7] The trial court consolidated the cases.

of fact as to whether the statute of limitation was tolled under OCGA § 9-3-96. Specifically, the court concluded that the Plaintiffs failed to show any affirmative action on the part of the Defendants that constituted deception, there was no evidence that the Defendants dissuaded the Plaintiffs from bringing their actions, and they failed to exercise reasonable diligence to discover their causes of action. These appeals followed.

*Case Nos. A25A1760, A25A1785, A25A1786, A25A1787, A25A1788, A25A1789, A25A1790, A25A1791, A25A1792, A25A1794, A25A1848, and A25A1849*

In related claims of error, the Plaintiffs argue that the grant of summary judgment to the Defendants was improper.[8] Specifically, the Plaintiffs argue that genuine issues of material fact remain as to whether the statute of limitation was tolled because they presented evidence to show that (1) the Defendants committed actual fraud; (2) the fraud concealed the cause of action; and (3) they exercised reasonable diligence to discover their claims. After careful consideration of the record and the pertinent law, we disagree.

---

[8] Because the Plaintiffs filed identical briefs in all twelve cases and argue their enumerations of error collectively, we likewise will address their claims collectively.

> On motion for summary judgment based upon the running of the statute of limitation, the movant has only the burden of proof as to an affirmative defense of the running of the statute of limitation and not to establish the absence of facts showing a tolling. The burden of persuasion that the statute of limitation has not attached then falls to the plaintiff to present some evidence showing that an issue exists that the statute has not run but has been tolled.

*Mayfield v. Heiman*, 317 Ga. App. 322, 328(2) (730 SE2d 685) (2012) (quotation marks omitted). "The plaintiff has the burden of showing the existence of facts that would toll the statute of limitation." *Falanga v. Kirschner & Venker, P. C.*, 286 Ga. App. 92, 94(1)(a) (648 SE2d 690) (2007).

"A statute of limitation creates a time limit for suing in a civil case, based on the date when the claim accrued. A claim accrues when the injury occurred or was discovered." *PTI Royston, LLC v. Eubanks*, 360 Ga. App. 263, 267(1) (861 SE2d 115) (2021) (citation modified). The period of limitation for personal injury actions is two years. OCGA § 9-3-33; *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 751(1) (472 SE2d 532) (1996). But if a minor child was the victim of sexual abuse, the victim was "entitled to the same time after he or she reaches the age of 18

years to bring an action[.]" OCGA § 9-3-90(b).[9] Here, none of the Plaintiffs dispute that their claims are time-barred under OCGA § 9-3-33. Instead, the Plaintiffs argue that the statute of limitation was tolled under OCGA § 9-3-96. That statute provides that "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." Thus,

> [a] plaintiff who seeks to toll a limitation period under OCGA § 9-3-96 must make three showings: first, that the defendant committed actual fraud; second, that the fraud concealed the cause of action from the plaintiff, such that the plaintiff was debarred or deterred from bringing an action; and third, that the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation.

*Doe II*, 313 Ga. at 561(2) (quotation marks omitted). Because the Defendants do not dispute the first prong that actual fraud occurred, our analysis will focus on the latter two prongs.

---

[9] Although the General Assembly enacted OCGA § 9-3-33.1(a)(2) in 1992 which permits child victims of sexual abuse to file a civil suit "on or before the date the plaintiff attains the age of 23 years[,]" the statute did not revive any claims that were already time-barred. See Ga. L. 1992, p. 2473 § 1.

(a) *Concealment of the Cause of Action*. It is well settled that the "key element" to toll the statute of limitation is that "the fraud must have debarred or deterred [the] plaintiff from bringing the suit timely." *Carroll v. Piedmont Med. Care Corp.*, 352 Ga. App. 348, 353 (834 SE2d 868) (2019); *Cochran Mill Assoc. v. Stephens*, 286 Ga. App. 241, 245–46(1) (648 SE2d 764) (2007) ("[A]ppellant must establish intentional concealment and actual deterrence before the limitation statutes will be tolled."). See also *Doe II*, 313 Ga. at 564(2)(b) ("[D]efining 'debar' as to cut off from entrance, as if by a bar; to exclude; to deny, and defining 'deter' as to prevent by fear; hence, to hinder, or prevent by opposing motives.").

> To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent.

*Mayfield*, 317 Ga. App. at 327(2). "In other words, the fraud must conceal the cause of action and cut plaintiff off from suing, preclude him, hinder him, shut him out, or exclude him to debar him from bringing suit for purposes of suspension of the running of the statute of limitation." *Carroll*, 352 Ga. App. at 353 (quotation marks omitted).

12

"*[M]ere silence is insufficient to show fraudulent concealment.*" *Robertson v. Robertson*, 333 Ga. App. 864, 870(1) (778 SE2d 6) (2015) (emphasis supplied). See also *Moore v. Meeks*, 225 Ga. App. 287, 288(2) (483 SE2d 383) (1997) ("[T]o toll the statute of limitation, concealment of a cause of action must be by positive affirmative act and not by mere silence.").

Here, the Plaintiffs have failed to point to any evidence that the Defendants' actions concealed the Plaintiffs' claims and prevented or hindered them from filing their lawsuits. The Plaintiffs primarily rely on evidence that the Archdiocese failed to publish the 2018 list in a more timely manner, transferred Edwards and Cristancho between multiple parishes, and kept personnel files in secret archives. But the fact that the Archdiocese kept files pertaining to sexual abuse in secret archives, did not publish the list of priests who had been credibly accused of sexual abuse before 2018, and transferred Edwards and Cristancho between multiple parishes does not show that some trick or artifice was employed that hindered the Plaintiffs' investigation to toll the statute of limitation. Indeed, the Plaintiffs do not point to any evidence in the vast record on appeal to show that they ever requested information from the Defendants about their knowledge and involvement in the abuse, or that the Defendants refused

to provide information. Instead, the Plaintiffs merely invite us to assume that the Defendants hindered them from filing their lawsuit based on the Defendants' silence or failure to disclose information. But as stated above, mere silence is insufficient to show fraudulent concealment to toll the statute of limitation. Moreover, we cannot speculate what the response from the Archdiocese would have been if the Plaintiffs had requested the information. Therefore, in the absence of any evidence to show that the Defendants took some affirmative actions to prevent the Plaintiffs from bringing their claims, the trial court did not err by concluding that there was no genuine issue of material fact as to fraudulent concealment under OCGA § 9-3-96.[10] See *Mayfield*, 317 Ga. App. at 327–28(2) (beneficiaries to a trust agreement failed to show that an accounting firm concealed causes of action from them where the beneficiaries failed to point to any evidence that the firm deterred them from hiring a lawyer, or that the

---

[10] Although Doe argues that the trial court incorrectly concluded that he failed to show fraudulent concealment because he knew the acts that were committed against him, see *Doe II*, 318 Ga. at 565–66(2)(b) (rejecting this Court's reasoning that Doe failed to show fraudulent concealment on the grounds that the alleged abuse placed him on notice that the Defendants had wronged him, because the abuse by the priests would not have put him on notice of his claims against the church), we note that the trial court expressly determined that the record "shows a complete absence of any affirmative act of alleged deception by [the Defendants] directed to or known by any Plaintiff that could have dissuaded that Plaintiff from pursuing potential claims."

14

firm took any affirmative action to deter them from timely filing a complaint); see also

*Doe v. Catholic Bishop for Diocese of Memphis*, 306 SW3d 712, 730(2) (Tenn. 2008)

(stating that "[h]ad the Diocese been asked about [the priest]'s prior offenses in 1987,

we cannot know whether the Diocese would have been forthcoming in response to

such inquiries. [Thus], had Doe requested such information and been refused, our

decision might be different.") (quotation marks omitted); *Cevenini v. Archbishop of*

*Washington*, 707 A2d 768, 774(III) (D. C. 1998) ("[W]e are unwilling to hold that a

failure to disclose information that has not even been requested constitutes fraudulent

concealment. The mere fact of transferring [the priest] from one parish to another

could not have had the effect of concealing appellants' causes of action against [the

Archdiocese.]"). Compare *Goldston v. Bank of Am. Corp.*, 259 Ga. App. 690, 694 (577

SE2d 864) (2003) (statute of limitations tolled in action by trust beneficiaries against

trustee where the trustee failed to disclose the trust's existence, concealed the assets,

and failed to disburse assets *as required*, which deterred the beneficiaries from bringing

an action to recover the assets); *Redwing v. Catholic Bishop for the Diocese of Memphis*,

363 SW3d 436, 465-67(IV)(B) (Tenn. 2012) (statute of limitations tolled in action

involving child sexual abuse by a priest based on allegations that the Diocese covered

up the priest's sexual abuse "*and* misled [the victim] and his family about its knowledge and involvement.") (emphasis within the original).

(b) *Reasonable Diligence*.

As a final requirement for tolling under OCGA § 9-3-96, a plaintiff must show that he exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation. Fraud will toll the limitation period only until the fraud is discovered or by reasonable diligence should have been discovered. Reasonable diligence cannot be measured by a subjective standard, but, rather, must be measured by the prudent man standard, which is an objective one.

*Doe II*, 313 Ga. at 568(2)(c) (citation modified).[11] And "[a]lthough issues concerning a plaintiff's diligence in discovering fraud is usually for the trier of fact, a plaintiff may fail to exercise due diligence as a matter of law." *Falanga*, 286 Ga. App. at 94(1)(a).

Here, we conclude that no genuine issue of material fact remains as to whether the Plaintiffs exercised reasonable diligence under OCGA § 9-3-36. We have not

---

[11] We note that "where a confidential relationship exists, a plaintiff does not have to exercise the degree of care to discover fraud that would otherwise be required and instead has a lessened duty to discover what should be discoverable through the exercise of ordinary care." *Doe II*, 313 Ga. at 568–69(2)(c) (citation modified). The Plaintiffs here, however, deny that there existed any confidential relationship with the Defendants in the years following the allegations of abuse to the present.

uncovered any evidence in the record to show that the Plaintiffs exercised diligence to discover their causes of action once they reached adulthood. Indeed, each Plaintiff testified that from the time they reached adulthood until the time they filed their lawsuit, none of them investigated whether Edwards or Cristancho had other victims, whether the Defendants knew of the abuse, whether Edwards or Cristancho had been the subject of any disciplinary action, or whether they had grounds to file a lawsuit. And although the Plaintiffs heavily rely on the Defendants' failure to disclose the priests' history of sexual abuse to argue that they could not have known what causes of action they might have had against the Defendants, the fact that the Defendants did not disclose the priests' history before 2018 has no bearing on the Plaintiffs' failure to make an inquiry. Our Supreme Court specifically stated in *Doe II* that "[w]hat else Doe did, or did not do, to discover the Church's alleged fraud in the decades between the time he became an adult and November 2018 will affect the ultimate determination of diligence for purposes of tolling under OCGA § 9-3-96." *Doe II*, 313 Ga. 570(2)(c). And simply put, the record here is devoid of evidence that the Plaintiffs conducted any investigation as to whether they had any causes of action against the Defendants.

Nevertheless, the Plaintiffs assert a number of arguments to support their claim that issues of fact remain as to whether they exercised reasonable diligence, but none of those arguments have any merit. Relying on our Supreme Court's decision in *Coe v. Proskauer Rose, LLP*, 314 Ga. 519 (878 SE2d 235) (2022), the Plaintiffs first argue that they were entitled to continue to rely on the Defendants' initial failure to disclose the sexual abuse by Edwards and Cristancho, even though they ceased to have a relationship with the Defendants. But the Court has previously stated that the mere fact that a confidential relationship once existed between two parties may not forever excuse a plaintiff from the duty to exercise reasonable diligence. See *McClure v. Raper*, 266 Ga. 60, 60(1) (463 SE2d 125) (1995) ("The fact that the parties once were guardian and ward, however, may not forever excuse the former ward from the duty to exercise the required degree of diligence.").

Moreover, *Proskauer* is distinguishable from the instant cases, and thus the Plaintiffs' reliance on that decision is misplaced. In *Proskauer*, the plaintiffs were advised by their accountants about a tax strategy to invest in distressed debt, and their accountants advised them to seek counsel from Proskauer, an "independent law firm." *Proskauer*, 314 Ga. at 519. The plaintiffs followed their accountant's advice and

18

sought counsel from Proskauer, but the plaintiffs suffered losses on their tax returns. Id. The IRS later initiated an audit against the plaintiffs, which they settled years later. Id. The plaintiffs subsequently filed suit against Proskauer and asserted claims for fraud and legal malpractice, and Proskauer later filed a motion for summary judgment, arguing that the statute of limitation had expired. Id.

In reversing the trial court's grant of summary judgment, the Court held that genuine issues of fact remained as to whether the plaintiffs exercised reasonable diligence to discover their causes of action. *Proskauer*, 314 Ga. at 532–33(3). Specifically, the Court reasoned: "*[T]he Coes did not simply ignore the problem*; they hired independent counsel with an established reputation in tax matters to assist them in the audit process." Id. (emphasis supplied). Here, however, the record is devoid of any evidence that the Plaintiffs took action to investigate their causes of action before they filed their lawsuit in 2018. Thus, *Proskauer* is distinguishable on its facts and does not provide a basis to reverse the trial court's summary judgment order.

Second, the Plaintiffs argue that the affidavit from Dr. Corwin created an issue of fact as to their diligence. As stated above, Dr. Corwin opined generally that "victims of child sexual abuse often delay or never disclose their childhood and

adolescent sexual victimization" and that "[t]his is even more so for male victims of child sexual abuse compared to female victims." But Dr. Corwin did not interview any of the Plaintiffs, and we are unaware of any authority, and the Plaintiffs do not cite to any authority, that excuses a plaintiff from exercising reasonable diligence based on the effects of sexual abuse on minor victims.[12] Thus, Dr. Corwin's general opinion as to why the Plaintiffs failed to investigate their causes of action before 2018 is wholly speculative and insufficient to create an issue of fact as to reasonable diligence.[13] See *Sheffield v. Jekyll Island State Park Auth.*, 369 Ga. App. 265, 266 (893 SE2d 158) (2023) ("[S]peculation which raises merely a conjecture or possibility is not sufficient

---

We note that the Legislature has tolled the limitation periods for individuals who are incompetent because of intellectual disability or mental illness. See OCGA § 9-3-90(a) ("Individuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons."). None of the Plaintiffs here, however, assert that they are intellectually disabled or suffer from any mental illness.

[13] While we are certainly sympathetic to the general point that victims of abuse face significant mental challenges which may prevent them from coming forward in a timely manner, that it is a consideration that is best presented to the Legislature, who is in a position to craft remedies such as OCGA § 9-3-33.1 to address such general concerns. But this Court, however, "is a court or the *correction* of errors of law." *Albers v. Albers*, 376 Ga. App. 267, 269(1) (918 SE2d 448) (2025) (emphasis supplied).

20

to create even an inference of fact for consideration on summary judgment.")
(quotation marks omitted).

Finally, the Plaintiffs argue that any attempt to conduct an investigation into possible causes of action would have been futile because Archbishop Gregory "lied" to another alleged victim about the reasons for Edwards' transfer[14] and evidence regarding the sexual abuse was kept in secret archives. But this claim is also unavailing. The Plaintiffs do not cite to any caselaw, and we are unaware of any such caselaw, which holds that fact issues can exist as to reasonable diligence based upon alleged futility, despite a plaintiff's failure to conduct any investigation into possible causes of action against a defendant, and we decline to craft such a holding here. To hold otherwise would require this Court to speculate that an investigation would have been futile, but again, "summary judgment cannot be avoided based on speculation and conjecture. And, although the plaintiff is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere

---

[14] That alleged victim is not one of the Plaintiffs in these appeals. Also, Archbishop Gregory clarified that he had not yet reviewed Edwards' personnel file when the alleged victim asked about the reasons for Edwards' transfers, and that after reviewing Edwards' file, he discovered that his response was "inaccurate." But the record shows that Archbishop Gregory told the victim in that same meeting about another victim who had accused Edwards of sexual abuse.

conjecture or possibility or upon evidence which is too uncertain or speculative." *Mannion & Mannion, Inc. v. Mendez*, 355 Ga. App. 28, 31 (842 SE2d 334) (2020) (citation modified). Such a holding would also conflict with our precedent which states that "[a] plaintiff cannot sit quietly by for a length of time exceeding that named in the statute of limitations, and avoid its operation and save his cause of action by the mere allegation that he made the discovery only recently." *JPMorgan Chase Bank, N. A. v. Whitaker*, 376 Ga. App. 254, 261(1) (918 SE2d 425) (2025). This is especially so here, where, as stated above, the Plaintiffs did not make any effort to investigate potential causes of action against the Defendants.[15] For all of these reasons, the trial court did not err by concluding that no issues of material fact remained as to reasonable diligence under OCGA § 9-3-96. See *Falanga*, 286 Ga. App. at 95(1)(a) (plaintiff failed to show reasonable diligence to toll statute of limitation of fraudulent billing claim where there some evidence to show that the plaintiff could have discovered evidence pertaining to their claim near the time that the fraud occurred).

---

[15] And we note that, as recounted above, the Archdiocese established a victim assistance program to engage and aid victims of sexual abuse, and it established a 1-800 number service to encourage victims to report sexual abuse. Thus, there is some evidence that avenues were available to the Plaintiffs to discover possible causes of action against the Defendants.

See also *Doe v. Roman Catholic Diocese of Charlotte, NC*, 242 N.C.App. 538, 544–45(1) (2015) (plaintiff failed to establish reasonable diligence to toll statute of limitation for fraud and misrepresentation claims against the Diocese because he did nothing to investigate the Diocese); *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich.App. 632, 646(II)(c)(ii) (2004) (stating that "defendant's failure to publicly disclose [the priest]'s actions or defendant's knowledge of them did not in any way prevent plaintiff from knowing that he was abused by a Catholic priest who was under the supervision and control of defendant, that the sexual abuse took place on church property, that defendant failed to prevent [the priest]'s acts, or that plaintiff was harmed. Taking into account all the information available to plaintiff, we conclude that he knew, or through diligent inquiry should have known, of his possible causes of action against defendant[,]" and thus the statute of limitation was not tolled).

In sum, we are certainly mindful of the grievous circumstances involving heinous conduct which led to the filing of these cases. But for the foregoing reasons, the trial court correctly determined that the Plaintiffs' claims were not tolled under OCGA § 9-3-96 and we therefore affirm the trial court's order granting the Defendants' motion for summary judgment in all of the cases.

*Judgments affirmed. Rickman, P. J., and Gobeil, J., concur.*